GUSTAV WILLIUS v. FREDERICK R. MANN and Others.[1]

February 11, 1904.

Nos. 13,765—(208).

**Reorganization of Insolvent Bank.**

The Germania Bank of St. Paul became insolvent, and made a general assignment for the benefit of its creditors. Subsequently, at the instance of creditors, a reorganization of the bank was effected under the provisions of Laws 1897, p. 109 (c. 89). The capital stock was reduced to $200,000, which was subscribed, and the assignee turned over and delivered to the

[1] Reported in 98 N. W. 341, 867.

officers of the new bank all property and effects of the old. New certificates of deposit were issued and delivered to the creditors for the amounts due them respectively, and the bank was reopened, and thereafter engaged in a general banking business. A number of stockholders in the old bank took no part in the reorganization proceedings, and did not become stockholders in the new bank. Subsequent to the reorganization the bank again became insolvent, and a receiver was appointed by the court to take charge of its affairs, who thereafter duly qualified and entered upon the duties of his trust. The assets being insufficient to pay the outstanding indebtedness of the bank, on application of the receiver the court made an order assessing all stockholders, both in the old and the new bank, one hundred per cent. of the amount of their holdings. It is *held:*

### Certificates of Deposit.

1. That the issuance and delivery by the reorganized bank of new certificates of deposit to the creditors for the amounts due them was not a payment of their claims, and did not operate to release and discharge the stockholders who did not become members of the new bank from their statutory liability as such.

### Liability of Stockholders.

2. That, as the new bank received all the property and effects of the old bank, and used and employed the same in its business, the stockholders thereof are primarily liable for all debts of the old bank, and all remedies against them should be exhausted before resorting to the stockholders who did not become members of the new concern, and who are secondarily liable only.

### Effect of Judgment.

3. The judgment of the court adopting and effectuating the reorganization provided that the reorganization should not operate to release any of the stockholders in any way or to any extent from their liability theretofore existing. *Held* ineffectual as against stockholders who were not parties to such proceedings and did not become members of the new bank.

### Same.

4. Stockholders are bound by a judgment against a corporation entered in proceedings to which they are not a party only so far as it concerns the affairs and liability of the corporation itself. Such a judgment does not conclude them upon questions respecting their personal or individual liability as stockholders.

Petition filed in the district court for Ramsey county pursuant to the provisions of Laws 1899, c. 272, by Gustav Willius, as receiver of Germania Bank, praying for an order levying an assessment upon the

stockholders. From the petition it appeared that on January 4, 1897, the outstanding capital stock of the bank was $400,000; that, being insolvent, the corporation on that day made an assignment for the benefit of its creditors; that thereafter pursuant to law and a plan of reorganization sanctioned by the judgment of said court, the bank was reorganized with a capital of $200,000; that on July 26, 1899, the bank having again become insolvent petitioner was appointed receiver thereof upon application of the state bank examiner. The receiver's petition was heard before O. B. Lewis, J., who made an order levying an assessment of "one hundred per cent. of the par value of each share of said capital stock of said Germania Bank, amounting in the aggregate to $400,000, to wit: the sum of $100 on each share thereof." From this order Frederick R. Mann, a stockholder of the original bank whose shares were transferred on its books prior to the assignment of the corporation in 1897, and Amanda H. Moss and Minna Petzold, original stockholders, twenty-five per cent. of whose shares were cancelled upon the reorganization of the bank, appealed. Modified.

*B. H. Schriber, W. H. Williams, A. E. Horn, A. D. & A. L. Keyes, W. S. Dwinnell,* and *Gideon S. Ives,* for appellants.

The present stockholders were primarily liable, and their liability should have been exhausted before any demand was made either upon those who transferred their stock prior to the assignment of January, 1897, or upon those whose stock was cancelled in the reorganization proceedings of 1897. Harper v. Carroll, 66 Minn. 487; State v. Germania Bank, 90 Minn. 150.

The statutory liability is barred by the statute of limitations as to the following classes of stock, to wit: (a) That held by those who transferred their stock within a year prior to the insolvency of the bank, January 4, 1897. (b) That cancelled in the reorganization proceedings. Kennedy v. Williams, 11 Minn. 219 (314); McArdle v. McArdle, 12 Minn. 53 (98); Trebby v. Simmons, 38 Minn. 508; Humphrey v. Carpenter, 39 Minn. 115; Harper v. Carroll, supra; Olson v. Cook, 57 Minn. 552. It may be claimed that the statute does not begin to run until it is determined in some way that there is a deficiency of assets and that a recourse to the liability on the stock is necessary. Our answer to this is, that the assignee and the creditors had

six years in which to ascertain that fact and bring the action; a time long enough in all reason and conscience for the purpose. It is evident that whether we compute from the maturity of the debts or from the time the conditions arose authorizing an action, we must begin with January 4, 1897, as the time when the statute began to run, and this is in accordance with the great weight of authority. Cook, Stock & Stockh. (2d Ed.) § 225; Hollingshead v. Woodward, 107 N. Y. 96; King v. Duncan, 38 Hun, 461; Hawkins v. Furnace, 40 Oh. St. 507; Carrol v. Green, 92 U. S. 509; Terry v. McLure, 103 U. S. 442; Barrick v. Gifford, 47 Oh. St. 180; Morgan v. Lewis, 46 Oh. St. 1; Flash v. Conn., 109 U. S. 371; Baker v. Atlas, 9 Metc. (Mass.) 182; Hilliker v. Hale, 117 Fed. 220. The creditors existing at the time of the reorganization by accepting new certificates of deposit dated August 16, 1897, entered into new engagements which paid the old debts, released the stockholders who transferred their stock in 1896, and the stockholders whose stock was cancelled August 9, 1897. St. Paul Trust Co. v. St. Paul Chamber of Commerce, 64 Minn. 439; Travers v. Dorr, 60 Minn. 173; Seymour v. Bank of Minnesota, 79 Minn. 211.

The judgment of reorganization which was actually entered was void for want of jurisdiction in so far as it attempted to modify the liability of the stockholders, for the reason that a judgment in personam cannot be obtained by mere publication. Bardwell v. Collins, 44 Minn. 97; Heffner v. Gunz, 29 Minn. 108; Lydiard v. Chute, 45 Minn. 277; Plummer v. Hatton, 51 Minn. 181; Thurston v. Thurston, 58 Minn. 279.

*Harris Richardson,* for respondent.

In a proceeding to enforce stock liability debts of the Germania Bank, evidenced by certificates of deposit issued pursuant to a decree reorganizing it, must be treated as liabilities existing at the time of the reorganization. Geib v. Reynolds, 35 Minn. 331; Hunt v. Roosen, 87 Minn. 68, 81; Wiley v. Dean, 67 Minn. 62; Maxfield v. Seabury, 81 Minn. 327; State v. Germania Bank, 90 Minn. 150; Holland v. Duluth Iron Min. & Dev. Co., 65 Minn. 324; Langworthy v. Garding, 74 Minn. 325; Graham v. Boston H. & E. R. Co., 14 Fed. 753.

It was proper for the court below to levy an assessment upon four thousand shares of the stock. That judgment was not appealed from,

and cannot be questioned in a collateral proceeding. Kipp v. Fullerton, 4 Minn. 366 (473); Hotchkiss v. Cutting, 14 Minn. 408 (537); Clague v. Hodgson, 16 Minn. 291 (329); Smith v. Valentine, 19 Minn. 393 (452); State v. MacDonald, 24 Minn. 48; Turrell v. Warren, 25 Minn. 9.

The amount of the assessment was also within the discretion of the court below. Kennedy v. Gibson, 8 Wall. 498; London & N. W. A. M. Co. v. St. Paul P. Imp. Co., 84 Minn. 144.

The assessment on account of stock liability is not barred by the statute of limitations, as to any of the stock. The statute did not begin to run in 1897. Before a stock liability can be enforced there must be an assessment. Aldrich v. Skinner, 98 Fed. 375. If the statute began to run in January, 1897, it was tolled by the decree in the reorganization proceedings and by the statutes. Hunt v. Roosen, 87 Minn. 68.

BROWN, J.

The Germania Bank of St. Paul was incorporated in 1884, under the general statutes of this state, with a capital stock of $300,000, which was increased in 1887 to $400,000, and divided into four thousand shares of $100 each. The bank became insolvent in 1897, and made a general assignment for the benefit of its creditors, the debts amounting at that time to about $750,000. The assignee took possession of the bank, its property and effects, and proceeded to wind up its affairs. Thereafter, in April, 1897, a majority in number and amount of the creditors presented to the district court of Ramsey county, under and pursuant to the provisions of Laws 1897, p. 109 (c. 89), a plan for the reorganization of the bank. This plan provided, among other things, for the payment of all debts in full, the issuance of new certificates of deposit in evidence of its debts, extending and fixing the time for the payment of overdue obligations, the reduction of the capital stock of the bank to $200,-000, and the reopening of the bank for general banking purposes. In this respect the reorganization differs from that considered in Hunt v. Roosen, 87 Minn. 68, 91 N. W. 259. In that case the purpose of the reorganization was to enable the officers of the bank to wind up its affairs, convert its assets into money, and pay and discharge its debts. In the case at bar it was contemplated and intended that the bank should

reopen its doors for general banking business, and such was the final result.

After a proper hearing the court below adopted the proposed plan of reorganization, and judgment to that end was entered in August, 1897. The new capital stock of $200,000 was raised in the manner provided by the plan of reorganization, and a large number of the holders of stock in the old bank subscribed and paid for stock in the new one, and new stock was issued and delivered to them. Some of the old stockholders declined to go into the reorganization proceedings. Some transferred their stock before the plan of reorganization was adopted. Subsequent to the judgment adopting the plan the assignee transferred and delivered to the officers of the bank all the property and effects in his hands as assignee. The new bank began business, and the assignee was discharged. Certificates of deposit were issued to the creditors in settlement of their claims against the old bank, and a considerable amount of such debts was thereafter paid by the new concern. On July 24, 1899, the bank again became insolvent, and in proceedings brought for that purpose a receiver was appointed, who thereafter duly qualified and entered upon the discharge of the duties of his office. At the time of his appointment the debts of the bank aggregated in round numbers $344,000, the larger proportion of which represented debts and liabilities contracted and incurred by the new bank; the balance represented debts of the old bank yet unpaid.

It is unnecessary to ascertain at this time the exact amount of the old and the new debts. The record is not clear. The parties are not agreed on the question, and the trial court made no specific finding thereon. The assets in the hands of the receiver being insufficient to pay all the debts, on July 27, 1903, a petition was presented to the court below, as follows:

That it would consider and determine the probable indebtedness of said bank, the expenses of said receivership, the probable amount of assets available for the payment of said indebtedness and expenses, as to what parties are or may be liable as stockholders of said bank, and the nature and extent of their liability; and that the court would by order, judgment, or decree direct and levy a ratable assessment on all parties liable as stockholders.

The petition came on for hearing after due notice to the stockholders, and was opposed by the appellants, stockholders in the old, but not in the new, bank, on the grounds, among others: (1) That the issuance to the creditors by the reorganized bank of new certificates of deposit for the amounts due them was a payment of such debts, and operated as a release and discharge of all stockholders who took no part in the reorganization proceedings and did not become stockholders in the new bank; (2) that the stockholders of the new bank are primarily liable for all debts of the bank, past or present, and that no assessment should be made against appellants until the remedies against those primarily liable are first exhausted.

Appellant Mann was a stockholder in the old bank, but had transferred his holdings prior to, but within a year of, the first assignment. Appellants Moss and Petzhold were stockholders in the old bank, but did not participate in the reorganization proceedings, or become stockholders in the new concern, and their stock was cancelled in the manner provided by the plan of reorganization. So that, if their contention that the issuance of certificates of deposit by the new bank to all the creditors operated to release and discharge the stockholders of the old bank who did not become members of the new be sound, no assessment should be made against them; or, if this be not so, and the stockholders in the new bank are primarily liable for all debts, old or new, and the remedy against them should be first exhausted, they are in position to insist that the receiver so proceed. The trial court overruled their objections, and made a general order assessing all stockholders in both the old and the new bank one hundred per cent. of the amount of their holdings; from which order this appeal was taken.

The conclusion we have reached in the case renders a decision of several questions urged by appellants unnecessary. They are not necessarily involved at this time. If at any time in the future it becomes necessary to enforce the assessment against appellants, all questions relating to their individual liability may be then determined. The questions we have referred to above apply alike to all the stockholders, and may be determined on this appeal.

1. Taking up the questions in the order in which they are stated above, we have for consideration first whether the issuance by the reorganized bank of certificates of deposit as evidence of its debts, and

their acceptance by the creditors, operated as a payment of the debts and the discharge of all the old stockholders from further liability for their payment. We are of the opinion that this question should be answered adversely to appellants.

Whether a promissory note or other contract for the payment of money given and received in place of an overdue note or contract was intended by the parties as a payment and discharge of the old debt is always a question of fact to be determined from the facts and circumstances surrounding the transaction, and thus the question at bar must be determined. The purpose of the reorganization was to put the bank on its feet, and enable it to continue its business; and the proposed plan of reorganization expressly provided for taking up the old debts by the issuance of certificates of deposit by the new bank, and this was agreed to by all parties taking part therein. That it was not their intention thus to pay and discharge the debts is made manifest by the final judgment of reorganization, which expressly preserved and continued the liability of all stockholders, both of the old and the new bank, for the payment of all debts. That judgment became a part of the contract between the parties resulting from the reorganization proceedings, and conclusively rebuts any inference of payment that might arise from the issuance and acceptance of new certificates. The creditors must, in view of the terms of the judgment, be deemed to have accepted the new evidence of their claims upon the terms of the judgment that no stockholder, present or past, shall in any way, or to any extent, be released from any existing liability.

Whether this provision of the judgment be binding upon the stockholders as respects their present liability or not, it is conclusive that the creditors did not accept the new certificates of deposit as payments of their claims. The case in this respect is not unlike Hunt v. Roosen, 87 Minn. 68, 91 N. W. 259, and is clearly distinguishable from Seymour v. Bank of Minnesota, 79 Minn. 211, 81 N. W. 1059. We therefore hold that the stockholders in the old bank who took no part in the reorganization and did not become stockholders in the new bank were not discharged from liability for the debts of the old bank by the issuance, under the circumstances stated, of certificates of deposit by the new bank for the old debts.

2. The second contention of appellants is that the stockholders of the reorganized bank are primarily liable for all debts, whether of the new or the old bank. We think their contention in this respect must be upheld, both on principle and authority.

It was held in Harper v. Carroll, 66 Minn. 487, 69 N. W. 610, 1069, that, as between individual transferers and transferees of stock of a corporation, the liability of the transferers cannot be enforced until an effort has been made to collect from the transferees. This is in harmony with the general equity rule that, where a creditor has a remedy against two funds for the payment of his debt, the one primarily and the other secondarily liable, he may be compelled to resort to the fund first liable for its payment, and to exhaust his remedy against it before resorting to the other. No reason occurs to us why the rule of the Harper case should not apply to the one at bar. The fact that that case involved a controversy between individual stockholders does not make the rule of equity there applied any less applicable here.

At the time the bank was reorganized its assets amounted to over a million dollars, and this was $200,000 over and above all its debts and liabilities. All these assets at the instance of the creditors were transferred and delivered to the new bank, and its officers had thereafter the full and unrestricted control and management of the same, and in the interests of the new bank, its stockholders and creditors. Those of the stockholders in the old bank who did not become such in the new, and had no voice in the conduct of its affairs, were, by the action of the court in the reorganization of the bank, under a statute passed long after the bank was originally organized and the liability of the stockholders had become fixed, deprived of any benefit in such assets, except such as might accrue from the management of the affairs of the new bank and the reduction of the old debt. But they had no voice in the conduct of its affairs. Dividends accruing from the new business were paid to the new stockholders, and properly so, and the sole and absolute right to conduct its affairs was vested in the new officers. Under such circumstances there can be no principle or rule of equity which would relieve the stockholders in the new bank, which had thus acquired title to the property and its beneficial use, from the obligation to pay and discharge the debts with which the property was incumbered, at least to the extent of their statutory liability. The old stockholders were

deprived of the property. The new bank had the exclusive ownership and control of it, and its stockholders ought in equity to be held liable for the debts for the payment of which the property was chargeable. And we so hold.

The stockholders of the reorganized bank are primarily liable for the debts of the old bank, and all remedies against them should be exhausted before resorting to the stockholders who did not become members of the new bank. Of course, the old stockholders are in no way liable for any of the debts incurred or contracted by the new bank; and for the debts of the old bank only in case there be a deficiency after the remedies against the new stockholders have been exhausted.

But it is contended by respondent that the liability of all stockholders, whether members of the new bank or not, was continued and preserved by the judgment adopting and effectuating the plan of reorganization. The portion of the judgment relied upon in support of this claim expressly provides that none of the stockholders of the bank, past or present, shall in any way, or to any extent, be released from any liability existing at the time of the reorganization. It is clear that this judgment cannot have the force and effect contended for. The stockholders of the old bank who did not become members of the new, such as appellants in this case, were not parties to the reorganization proceedings. They were not served with notice of the pendency of that proceeding, except by publication, which was insufficient to warrant a personal judgment against them, and were clearly not bound by the judgment against the corporation, in so far, at least, as concerns their personal liability.

It is true that, in proceedings against a corporation, the corporation, when duly summoned and brought into court, represents the stockholders; and all stockholders, in so far as the interests and affairs of the corporation are concerned, are bound by the judgment of the court. But the stockholders are not bound by any such judgment as respects their individual interests or liability. The proceedings under consideration for the reorganization of the bank were, in effect, proceedings in rem, and in no way involved the personal liability of the stockholders for the debts of the bank; and the judgment in that proceeding cannot have the effect of binding them in their individual capacity.

The case of Holland v. Duluth Min. & Dev. Co., 65 Minn. 324, 68 N. W. 50, does not sustain respondents' contention. It was held in

that case that the stockholders were bound by a judgment against the corporation as to the liability of the corporation and the amount of the recovery, but the individual liability of the stockholders was in no way involved in the action. The action concerned the affairs of the corporation itself, and not the personal liability of the stockholders.

It is also contended by appellants that the assessment of one hundred per cent. was excessive, and an abuse of discretion of the trial court. In view of the disposition we have made of the case respecting the two features covered by the opinion, we do not deem it necessary to go into this question. It may never become necessary to enforce the order as to these appellants, and, if not, of course it is immaterial to them whether the assessment remain at one hundred per cent. or be reduced.

The court below will proceed as directed in this opinion, and exhaust all remedies against the stockholders primarily liable, and if, when those remedies have been exhausted, sufficient to pay the debts is not realized, then the court may proceed against appellants and other stockholders secondarily liable; and if at that time an assessment of one hundred per cent. shall be deemed excessive, and more than is reasonably necessary to meet whatever deficiency then exists, the assessment shall be modified and reduced to meet existing necessities, and either the receiver or stockholders then liable may apply to the court for such modification.

The order appealed from is modified accordingly, and the cause remanded to the court below for further proceedings in accordance with the views herein expressed.

On March 21, 1904, the following opinion was filed:

PER CURIAM.

It is claimed by respondent in a petition for a reargument of this cause that the court erred in stating in the opinion that appellants Moss and Petzold were not stockholders in the new bank, and for this and other reasons a rehearing is prayed for. In disposing of this case we adopted the suggestion of counsel for respondent, and decided only those questions which were deemed common to all stockholders; dividing the stockholders into two classes—those who held stock in the new bank and those who did not—leaving all questions affecting the liability of

the individual for future consideration, should a case ever be presented. It is practically conceded in the briefs that Moss and Petzold were not stockholders in the new bank, and in writing the opinion we supposed this to be the fact. It is asserted in appellants' brief that their stock was cancelled in the reorganization proceedings, and the statement is not challenged, or the contrary asserted, in respondent's brief. But whether they were stockholders in the new bank is not important at this time. The fact is not clear from the record, and there are no findings of the trial court.

In determining the question of primary and secondary liability of the stockholders only those stockholders who were not in any way parties to or interested in the new bank were intended to be included within the class who are held secondarily liable for the debts of the bank, and, if Moss and Petzold do not come within that class, the decision does not apply to them. The questions as to what amount of stock they held in the new bank, and the extent of their liability if they retained any part of their original holdings, are questions we did not intend or attempt to cover. They were in no way involved or discussed.

After full consideration of respondent's application for a rehearing in other respects, we adhere to the general views expressed in the former opinion, and the application is denied.