GUSTAV WILLIUS v. ERNST ALBRECHT.[1]

March 28, 1907.

Nos. 15,030—(166).

**Stockholder's Liability—Limitation of Action.**

Where two forms of procedure exist to enforce the superadded liability of the stockholder in a corporation, the statute 'of limitations commences to run from the time when suit might have been brought against the stockholder under either form of procedure.

**Same—Concurrent Remedies.**

Chapter 272, Laws 1899, did not repeal sections 16 and 17, c. 76, G. S. 1878. It merely provided a cumulative remedy for the enforcement of the superadded statutory liability of stockholders. The two remedies being concurrent, the statute of limitations commenced to run against the cause of action at the time when either remedy became available for the enforcement of the cause of action.

Appeal by defendant from an order of the district court for Ramsey county, Olin B. Lewis, J., overruling demurrers to the complaint and to the separate causes of action therein stated. Reversed.

*O'Brien & Albrecht,* for appellant.

Laws 1899, c. 272, constituted no part of defendant's alleged "contract" as a stockholder. The fact is that statute was not enacted until long after the last issue of stock had been made by said bank to defendant. Does the remedy, in point of fact, constitute any part of the contract at all? If so, then the receiver was entirely precluded from proceeding against defendant under that statute to enforce a stockholder's contract made years earlier. The true rule, obviously, is that declared by this court with reference to said act, namely, that "there is no such thing as a vested right to a particular remedy. The legislature may always alter the form of administering right and justice." And this is so, for the very reason that the remedial right does not constitute part of the stockholders' "contract."

[1] Reported in 111 N. W. 387.

Straw & E. Mnfg. Co. v. L. D. Kilbourne, B. & S. Co., 80 Minn. 125, 137.

The right sought to be enforced, and not a mere form of procedure, constitutes the test as to when plaintiff's "cause of action" accrued. It is conceded that the form of procedure prescribed by the statute cited is not exclusive, but is merely cumulative and supplementary to that under chapter 76 (G. S. 1866); and that the provisions of chapter 76 for the enforcement of the stockholders' liability are applicable where receivers have been appointed for insolvent banks in accordance with Laws 1895, c. 145, § 20 (as amended) as in the present case. Anderson v. Seymour, 70 Minn. 358, 376; Ueland v. Haugan, 70 Minn. 349; Mercantile Nat. Bank v. Macfarlane, 71 Minn. 497; Somers v. Dawson, 86 Minn. 42; Hunt v. Doran, 92 Minn. 423.

The statute of limitations runs from the time when the holder of the right to bring the action can apply to the court for relief, and is enabled to commence proceedings to enforce his rights. Ganser v. Ganser, 83 Minn. 199; Everett v. O'Leary, 90 Minn. 154, 157. The ultimate issue here involved, namely: When did the receiver's "cause of action" accrue? must be determined with reference to these four incontrovertible propositions: (1) The stockholders' superadded liability is not enforceable more than six years "after the cause of action accrues." Hunt v. Doran, supra. (2) "The cause of action or suit arises, according to the universal rule in courts of both law and equity, when and as soon as the party has a right to apply to the proper tribunals for relief,"—when he "is enabled to commence proceedings to enforce his rights." (3) The receiver had the "right to apply to the proper tribunals for relief" against defendant under the provisions of chapter 76. (4) Such "right" has existed from the time when the receiver was first able to proceed against defendant directly under said chapter 76, without resorting to an assessment. During all the years intervening since that time, the doors of the courts were wide open to the receiver to enforce any valid claim he might have had against defendant as a stockholder.

Laws 1899, c. 272, does not purport to create a separate, independent "cause of action" within the meaning of the statute of limitations. (1) The form of remedy established by that act, did not ex-

ist at any time when defendant is alleged to have contracted for stock with said bank. Hence it may be invoked against him solely because "no substantial right is impaired thereby." Straw & E. Mnfg. Co. v. L. D. Kilbourne B. & S. Co., 80 Minn. 125, 137. (If the act created a new cause of action it would be unconstitutional as against this defendant. Edwards v. Kearzey, 96 U. S. 595; Bronson v. Kinzie, 1 How. 311.) (2) The remedy or relief constitutes no part of the "cause of action." The cause of action consists of the primary right and duty and the delict or wrong combined. King v. Chicago, M. & St. P. Ry. Co., 80 Minn. 83, and citations; Dunnell, Minn. Pl. §§ 286–290. The fact, however, that one of said forms of procedure partakes of the nature of an action at law while the other is governed by equitable principles, affords no ground for regarding them as distinct "causes of action." Gilbert v. Boak Fish Co., 86 Minn. 365, 368, and citations. Thompson v. Myrick, 24 Minn. 4. (3) Laws 1899, c. 272, is available and effective only in aid of and accessory to other antecedent insolvency proceedings. It is a mere "supplemental practice act," a detailed "method of procedure." Straw & E. Mnfg. Co. v. L. D. Kilbourne B. & S. Co., supra; Somers v. Dawson, 86 Minn. 42; Hunt v. Whewell, 122 Wis. 33. It follows inevitably that the receiver's "cause of action" against the defendant in this case, is a single one, incapable of division, and could not possibly have accrued twice in parts or at wholly different times.

The statutory language—"after the cause of action. accrues"—cannot be construed to mean after the specific form of procedure selected by the plaintiff becomes available. The statute of limitations bars actions by the lapse of stated periods "after the cause of action accrues." (R. L. 1905, § 4071.) The receiver's position, in effect, is that this statutory language should be restricted by construction so as to substitute therefor the words, "after the form of procedure selected by plaintiff becomes available." Such a construction would constitute a palpable perversion of the plain meaning of familiar words and would require judicial legislation of the most drastic kind. The respective terms, "cause of action," and "form of procedure" or "form of action," from time immemorial have not been convertible, but have long since acquired definite, precise and fixed legal significations.

The code system of procedure, by abolishing all forms of actions and substituting therefor a single "civil action," necessitated that periods of limitation should be classified according to the substance and not the form of remedial rights. Statutes of this kind, under the code system of procedure, while operating on the remedy, limit the time within which it may be pursued according to the nature or subject matter of the "cause of action" and not according to the forms of legal machinery available for its enforcement. Humphrey v. Carpenter, 39 Minn. 115. It is the settled law of this state that the substance of the remedial right, and not the form of procedure adopted, constitutes the decisive test as to when the statute of limitations commences to run. Our statute of limitations being adopted from that of New York, "it may be legitimately inferred that our legislature, in adopting this statute intended, also, the construction or meaning given to it in the state from which it was taken." Ozmun v. Reynolds, 11 Minn. 341, 351 (459); Code Commrs. Rep. (N. Y. 1848) p. 109, § 77; McClung v. Capehart, 24 Minn. 17, 19; Humphrey v. Carpenter, supra; County of Redwood v. Winona & St. P. Land Co., 40 Minn. 512, 527; Bristol v. Washington County, 177 U. S. 133. These Minnesota cases are in harmony with other decisions elsewhere. Katz v. Belz, 178 Ill. 434; DeHaven v. Bartholomew, 57 Pa. St. 126; Whitman v. Atkinson (C. C. A.) 130 Fed. 759.

The law does not place it within the power of a receiver to postpone indefinitely the accrual of his cause of action by his omission to make application for an assessment. Bauserman v. Blunt, 147 U. S. 647, 657, 37 L. Ed. 316, and citations. Bennett v. Thorne, 36 Wash. 253; Ganser v. Ganser, 83 Minn. 199, 202; Litchfield v. McDonald, 35 Minn. 167; Granger v. Harriman, 89 Minn. 303. The receiver's right "to commence proceedings to enforce his rights" was complete as soon as he was appointed. The Minnesota cases are in consonance with the general rule that the right of action upon the superadded stock liability accrues immediately upon the insolvency of the corporation. 3 Clark & M. Corp. § 828b, 2633; Bennett v. Thorne (Wash.) 68 L. R. A. 113, and numerous citations; Boyd v. Mutual, 116 Wis. 155. The proposition deducible from these authorities is that when, as in Minnesota, the constitutional provisions imposing the superadded stockholder's liability are self-executing, the

"cause of action" is complete upon the insolvency of the corporation and the appointment of a receiver therefor. In the present case the order for the assessment "does not pertain to the right of action, but only to the evidence required to establish it"; an order of court cannot create the stockholders' liability.

There are cogent reasons why the construction of the national bank act adopted by the federal courts, that the receiver's right of action does not accrue until after the assessment has been made, is inapplicable to Laws 1899, c. 272. An assessment ordered by the comptroller differs radically from one ordered by a state court under Laws 1899, c. 272, in the following points, among others: It is made arbitrarily without notice; it does not involve the exercise of judicial powers; its validity is not dependent upon a previous judicial determination of the existence of the bank's liabilities and of the necessity for the appointment of a receiver; it creates the liability sued on. Bushnell v. Leland, 164 U. S. 684, 41 L. Ed. 598, and citations; Kennedy v. Gibson, 8 Wall. 498, 505; Bennett v. Thorne, 36 Wash. 253. The vital feature, then, which distinguishes the present case from the national bank decisions is that in the latter instance no liability exists until an assessment is imposed, while in the present case the liability exists independently of statute by virtue of the constitution and was enforceable ever since the receiver was first appointed.

The present case bears no analogy to that class of cases relating to the extra-territorial enforcement of the stock liability. In that line of authorities it is held that the right to sue a foreign stockholder extra-territorially does not accrue until the domiciliary court has first determined the necessity and extent of enforcing the stock liability. The rule of these cases, the receiver argued, should also be applied by the domiciliary court in actions to enforce the stock liability against domestic stockholders. The fallacy of this position is obvious. In the foreign jurisdiction the form of action is necessarily one at law against only a single stockholder or a limited number of stockholders. Owing, therefore, to a lack of jurisdiction over necessary parties and its inability to adjust equities between them, the foreign court is unable to entertain an action to enforce the stock liability extra-territorially until after the domiciliary court has first passed

upon the insolvency of the corporation, the existence of a deficiency of assets and the necessity of pursuing the stockholders. These preliminaries constitute essential prerequisites to the maintenance of an action against stockholders in a foreign jurisdiction, and such action will not lie, under the doctrine of comity, until it is apparent that no discrimination or injustice will result therefrom to the stockholder within the jurisdiction of the foreign court. None of these considerations are applicable to an action against a domestic stockholder in the domiciliary court. Hanson v. Davison, 73 Minn. 454; Howarth v. Lombard, 175 Mass. 570.

Finally, the question of the accrual of the receiver's cause of action against the defendant in this state, cannot be decided with reference to the principles governing the extra-territorial enforcement of the stock liability because such extra-territorial enforcement thereof is purely a matter of public policy, resting entirely in the discretion of the foreign tribunal and not at all a matter of legal right. It has been so held with reference to said Laws 1899, c. 272. Hunt v. Whewell, 122 Wis. 33; see Finney v. Guy, 189 U. S. 335; Hale v. Allinson, 188 U. S. 56; Great Western M. & M. Co. v. Harris, 198 U. S. 561.

*James E. Trask*, for respondent.

ELLIOTT, J.

This action was brought by Gustav Willius, as receiver of the Germania Bank, to recover from Ernst Albrecht the sum of $5,000 alleged to be due from him as a stockholder on account of statutory liability upon his stock. The defendant demurred to the complaint, and to each of the two causes of action attempted to be pleaded therein, on the ground that the facts stated do not constitute a cause of action. The appeal is from an order overruling the demurrers.

The arguments have taken a wide range, and the briefs are very elaborate; but much of the labor of counsel must go for naught, as we are satisfied that the trial court was wrong in holding that the cause of action was not barred by the statute of limitations.

In order to determine this question it is only necessary to consider the history of the proceedings from July 17, 1899, when it is admitted that the bank was insolvent. On July 26, 1899, Gustav Willius

was appointed receiver of the bank on the application of the state superintendent of banks, under Laws 1895, c. 145, as amended by Laws 1897, c. 228. The receiver at once qualified, and has ever since been acting under the appointment, which required him "to enforce all the individual liability of the stockholders of the said bank." Prior to April 18, 1899, the only method for the enforcement of the individual liability of the stockholders of corporations in this state was by an equitable action brought under chapter 76, G. S. 1894, against all the stockholders. The right to commence this action accrued immediately upon the insolvency of the corporation and before it was known or determined what amount, if any, the stockholders should be required to pay. Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. 626; Hanson v. Davison, 73 Minn. 462, 76 N. W. 254; Hunt v. Doran, 92 Minn. 426, 100 N. W. 222. On April 18, 1899, and before the appointment of this receiver, Laws 1899, c. 272, was enacted, under which the right of action to enforce the individual liability of the stockholders does not arise until the court has made an order determining the necessity for resorting to such liability, the amount to be paid by each share of stock, and assessing the stock therefor. Chapter 272, Laws 1899, did not repeal sections 16 and 17, c. 76, G. S. 1878. The Revised Laws of 1905 repealed sections 16 and 17 of chapter 76, G. S. 1878; but from the time of the enactment of chapter 272, Laws 1899, until the Revised Laws of 1905 went into effect, the two concurrent remedies for the enforcement of this liability were available to a receiver. The receiver instituted no proceedings to enforce the liability of the stockholders until more than six years after his appointment. He finally applied to the court for an order under the act of 1899, and on September 17, 1903, the court made an order assessing all persons owning stock in the bank.

It is conceded that the right of the receiver to maintain the equitable action under chapter 76 was barred after the expiration of six years from the date of his appointment. But the respondent claims that the receiver elected immediately upon his appointment to proceed under chapter 272, Laws 1899, and bring an action at law upon the assessment, should it be found necessary, and that thereafter he was unaffected by chapter 76, and that the statute of limitations did not commence to run against the cause of action until the assessment was

made. There is no allegation in the complaint that the receiver, immediately after his appointment, elected to proceed under the act of 1899, nor do we think such an allegation would be material unless the election was made effective by the institution of proceedings.

The respondent's entire argument is destroyed by the failure to distinguish between the cause of action and the remedies provided by the statutes for the enforcement of the cause of action. It may be conceded that the remedies entered into and formed a part of the contract; but this applied to the equitable remedy then existing, as well as to the subsequent remedy provided for by the act of 1899. These remedies were not inconsistent, and the doctrine of election of remedies has no application. Neither the provisions of chapter 76 in question nor of chapter 272 of the act of 1899 created this cause of action. The latter act merely provided a cumulative remedy for the enforcement of a cause of action. It constituted no part of the cause of action. Straw & Ellsworth Mfg. Co. v. L. D. Kilbourne Boot & Shoe Co., 80 Minn. 125, 83 N. W. 36. See Bennett v. Thorne, 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113; Hunt v. Whewell, 122 Wis. 33, 99 N. W. 599.

When this distinction is appreciated, the difficulties of this case disappear. The right to proceed against the stockholders accrued immediately upon the appointment of the receiver, and the statute of limitations commenced to run against the cause of action from that date. As said in Ganser v. Ganser, 83 Minn. 199, 86 N. W. 18, 85 Am. St. 461: "It is elementary that the statute of limitations commences to run against a cause of action from the time it accrues and becomes due and payable, or, as otherwise expressed, the cause of action or suit arises according to the universal rule, in courts of both law and equity, 'when and as soon as the party has a right to apply to the proper tribunals for relief.'" Or, as said in Everett v. O'Leary, 90 Minn. 154, 95 N. W. 901: "A cause of action accrues when the holder of the right to bring the action can apply to the court for relief and is enabled to commence proceedings to enforce his rights and from this time the statute of limitations is running." During six years from the date of the appointment of this receiver he had the unquestionable right to apply to the proper tribunal for relief through the procedure provided by chapter 76, G. S. 1878. The fact that

during the same time he had the right to proceed under chapter 272, Laws 1899, did not prevent the statute from running against the cause of action. The cause of action had accrued, and the statute of limitations could not be prevented from running by the failure of the receiver to take the steps which were necessary under chapter 272 before an action of law could be commenced to recover the amount of the assessments. When that time arrived, the cause of action had been barred and was no longer enforceable.

Order reversed.

On June 4, 1907, the following opinion was filed.

PER CURIAM.

The respondent filed a petition for a rehearing, and therein availed himself of the opportunity to reargue the questions which were determined by the court, as well as new questions which were not raised in the original briefs. Recognizing the importance of the case we have given the brief careful consideration, and as we are convinced that the respondent cannot prevail upon the merits there is no necessity for reargument on the part of the appellant.

The respondent confuses the distinction which exists between a liability which is imposed by the constitution and a liability which arises out of a contract of subscription to stock. The one is in favor of creditors, the other of the corporation. Cases which have arisen out of attempts to enforce the liability of members of mutual insurance companies are not applicable. The liability there arises when the assessments are made, and the cause of action then accrues. The suggestion that the act of 1899 must be construed to extend the statute of limitations as to assessments made under the acts, is now raised for the first time. It seems to us that it would be a forced construction to hold that the statute intended to ingraft an exception upon the statute of limitations.

We see no reason for departing from the opinion already filed and the application for a rehearing is therefore denied.