## EDWIN A. MILLER v. MARY AHNEMAN.[1]

March 6, 1931.

No. 28,271.

[1]Reported in 235 N. W. 622.

*Meighen, Knudson & Sturtz,* for appellant.
*Frundt & Morse,* for respondent.

OLSEN, J.

Plaintiff appeals from an order denying his motion for a new trial.

Plaintiff was appointed receiver of the Wells Farmers Mercantile Company, a Minnesota corporation engaged in the mercantile business, on June 8, 1923. The receiver was appointed on the complaint of five stockholders, two of whom were creditors of the corporation and held promissory notes against it to the amount of $2,500. A $1,000 note was past due, had been presented for payment, and the corporation had failed to pay. The complaint further states that the corporation owes debts to wholesale houses, banks, and individuals aggregating some $36,000, all due or about

to become due, and that it is unable to meet its obligations as they mature; that its capital is impaired and it is in imminent danger of insolvency; that it is necessary for the preservation of the property and the protection of the rights of the stockholders and creditors that the court immediately appoint a receiver to take over the assets and business of the corporation and administer same as a trust for creditors and stockholders, with the powers usually vested in such receivers. It is stated that plaintiffs have no adequate remedy at law. In one paragraph of the complaint it is stated that the corporation's property consists of a stock of merchandise of approximately $45,000 and accounts receivable of about $5,000. No actual value is stated. The corporation by answer admitted all allegations of the complaint and consented to the receivership.

The court appointed the receiver "with the usual powers and directions." In addition thereto it enumerated certain special powers of the receiver, among them the power to continue to operate the business, which was part of the relief asked for in the complaint. The receiver qualified and immediately took possession of the property and business of the corporation and has since administered and disposed of the same, except some $10,000 in cash on hand at the time the assessment against stockholders was made January 15, 1930. It may be noted that there were two receivers appointed, but the other died thereafter and plaintiff has continued as sole receiver and is herein referred to as such.

■ The present action was commenced in March, 1930, to recover an assessment made January 15, 1930, against the defendant on her constitutional liability as a stockholder of the corporation. Defendant by her answer set up the six-year statute of limitations as a defense, and the court sustained that defense. Under our statute and decisions, if the cause of action now sued upon accrued at or near the time of the appointment of the receiver in 1923, this action is barred. Ueland v. Haugan, 70 Minn. 349, 73 N. W. 169; Willius v. Albrecht, 100 Minn. 436, 111 N. W. 387, 112 N. W. 862; Lagerman v. Casserly, 107 Minn. 491, 120 N. W. 1086, 23 L.R.A.(N.S.) 673, 131 A. S. R. 506; Swing v. Barnard-Cope Mfg. Co. 115 Minn. 47, 131 N. W. 855; Shearer v. Christy, 136 Minn. 111, 161 N. W. 498.

■ The stockholders' liability to creditors of a corporation is created by art. 10, § 3, of our state constitution. The liability is absolute and unconditional under the language there used. When a business corporation is placed in the hands of a receiver because it is unable to meet its obligations when due and the corporation consents to such receivership, as it did here, it amounts to an admission of insolvency and constitutes an act of bankruptcy under the federal law. In re Maplecroft Mills (D. C.) 218 F. 659. The proceeding in that case was very similar to that before us here. The complaint or petition for appointment of a receiver did not directly allege insolvency. It alleged inability to meet current bills and danger of insolvency. It asked, as here, for the appointment of a receiver to conserve the property for the stockholders and creditors and to carry on the business. The court pointed out that a court of equity had no jurisdiction to appoint a receiver for the purpose of carrying on business for a corporation and that in the situation there shown the only ground on which the court could appoint the receiver was because of insolvency. It held that insolvency was sufficiently shown and that it must be presumed that the court based its action on a finding of insolvency.

There is other evidence of insolvency here. On June 14, 1923, the receiver inventoried the assets and liabilities of the corporation and found liabilities of $39,525, and assets of the value of $26,743.

There is conflict in the authorities as to whether an adjudication of insolvency is necessary in order to start the running of the statute of limitations. There are a number of cases holding that, where a corporation is unable to meet its current debts and ceases to pay or is placed in the hands of a receiver on that account, sufficient insolvency is shown to start the statute running. Godfrey v. Terry, 97 U. S. 171, 24 L. ed. 944, and cases cited in note 1 to Cowden v. Williams, 55 A. L. R. 1059, 1081. Other cases hold that the statute runs in favor of the stockholder from the time the insolvency of the corporation has been established in a judicial proceeding. Cases are cited in note 2, 55 A. L. R. 1084, as sustaining

this rule. The cases cited from the state courts are based to a large extent on the construction of the statutes of the particular state. The Ohio cases there cited appear to go only to the extent of holding that the mere fact that corporate assets are insufficient to meet corporate debts is insufficient to start the statute running, but that when a receiver is appointed or the property of the corporation put in liquidation for the benefit of creditors the statute starts running. In Richards v. Carpenter (C. C. A.) 261 F. 724, a bank case, it was held that the statute commenced to run when the superintendent took possession.

Our own cases of Willius v. Albrecht, 100 Minn. 436, 111 N. W. 387, 112 N. W. 862, and Shearer v. Christy, 136 Minn. 111, 161 N. W. 498, are cited in the note above referred to as sustaining the rule last above stated. In the Shearer case, 136 Minn. 111, 161 N. W. 498, 499, the corporation was concededly insolvent when the receiver was appointed. The question was whether the statute commenced to run from the time the receiver was appointed or from the time the assessment against stockholders was made by the court. While the court [136 Minn. 114] stated that the cause of action accrued "when the corporation is declared insolvent and goes into the hands of a receiver," it also stated: "From the time the insolvency is judicially declared by the appointment of a receiver, he, or any creditor of the corporation, is free to petition the court to make an assessment upon the stockholder's double liability." The appointment of the receiver was apparently assumed to be a sufficient declaration of insolvency.

In the case of Bernheimer v. Converse, 206 U. S. 516, 534, 27 S. Ct. 755, 761, 51 L. ed. 1163, the federal supreme court did hold that "the cause of action did not accrue until the receiver could sue upon the assessment after the stockholder had failed to pay, as required by the order of the Minnesota court," which is the same as the rule followed by the federal court in reference to national banks, under its construction of the national banking act. That decision was before this court in the Shearer case, 136 Minn. 111, 161 N. W. 498, and this court declined to follow it in cases involving corporations organized under our state laws.

As already noted, upon the record before us the only ground upon which a receiver could properly be appointed in this case was insolvency of the corporation. It is true that receivers may be appointed to liquidate solvent corporations on certain grounds and by proper proceedings under G. S. 1923 (2 Mason, 1927) §§ 8013, 8015 and 8021, and perhaps under the general equity powers of the court, but this is not that kind of a case. G. S. 1923 (2 Mason, 1927) § 9389 (3) refers to "cases provided by law" and adds no new powers.

■ We agree with the trial court in its findings and conclusions, that the corporation was insolvent at the time the receiver was appointed, that the appointment of the receiver was a sufficient judicial declaration of such insolvency, and that the statute of limitations commenced to run from the time of the appointment of the receiver. The evidence sustains these findings and conclusions.

There are sound practical reasons why a receiver or creditor of a corporation seeking to enforce stockholders' liability should act promptly. During any long delay stockholders may die, depart from the jurisdiction, or become insolvent, and in that way an undue burden may be cast upon remaining solvent stockholders, as well as loss result to creditors.

■ It is argued that the running of the statute was interrupted or tolled by the stockholders' filing objections to the levying of the assessment and consenting to adjournments of the hearing thereon, and that they are now estopped from claiming the benefit of the limitation statute. A case involving the effect of an injunction is cited; also the case of St. P. M. & M. Ry. Co. v. Olson, 87 Minn. 117, 91 N. W. 294, 94 A. S. R. 693, which states the rule as follows:

"Whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right."

There was here no prevention by any paramount authority or by any authority. The court, so far as appears, was at all times ready and willing to hear the application. Such continuances as

were had were either at the request or with the consent of plaintiff. He rested for over five years after his appointment before applying to the court. That the stockholders, in their objections filed against the assessment, alleged that an action by certain stockholders against the directors of the corporation was pending and requested that the matter be deferred until that action was determined, did not prevent a prompt hearing of the application for an assessment.

Other cases are cited involving delays caused by the closing of courts during the Rebellion, and cases where, by concealment or departure from the jurisdiction, defendant could not be served; or where plaintiff's right to resort to the courts did not exist; or where the performance of a condition was rendered impossible by the acts of an insurer. Nothing in these cases is sufficient to show any interruption of the statute in the present suit. 37 C. J. 726 is cited on the question of estoppel, as to the effect of a promise or representation that the bar of the statute would not be interposed, "or by inducing plaintiff to believe that an amicable adjustment of the claim will be made without suit, or by other forbearance to sue induced by defendant."

After the application for the assessment was made, there were some negotiations for adjustment of the proposed assessment. We do not find facts shown in that connection sufficient to constitute an estoppel.

■ A judgment against the corporation, entered in district court prior to the time the receiver was appointed, was offered in evidence and, so far as the record shows, received without objection. The judgment was regular on its face, and want of jurisdiction did not affirmatively appear therefrom. Plaintiff sought to impeach the judgment here by oral evidence tending to show that the summons therein, contrary to the recitals in the judgment, had in fact never been served on the corporation. The court excluded this evidence. The attack here made is a collateral attack. The judgment cannot be so attacked unless want of jurisdiction affirmatively appears on the face of the record. Leland v. Heiberg, 156 Minn. 30, 194 N. W. 93; In re Estate of Sutton, 161 Minn. 426, 201 N. W. 925; 3 Dunnell,

Minn. Dig. (2 ed.) § 5141. This judgment was relevant only on the question of the insolvency of the corporation. The fact of insolvency was sufficiently proved by other evidence. There was no error in excluding the evidence offered to impeach the judgment.

Plaintiff moved to strike out some of the court's findings of fact and conclusions of law. These findings are sustained by the evidence and sustain the conclusions of law, and there was no error in refusing to strike or in refusing to make different findings and conclusions.

Order affirmed.

